**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Leonardo MONZON,**
**Defendant–Appellant.**

No. 88–2141.

United States Court of Appeals,
Seventh Circuit.

Feb. 17, 1989.

Mark A. Eisenberg, Madison, Wis., for defendant-appellant.

Dan Bach, Asst. U.S. Atty., Madison, Wis., for plaintiff-appellee.

Before CUMMINGS and FLAUM, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.

FLAUM, Circuit Judge.

Defendant Leonardo Monzon was charged in a three-count indictment with: (1) conspiracy to distribute cocaine in violation of 21 U.S.C. § 846; (2) possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1); and (3) intentional distribution of cocaine in violation of 21 U.S.C. § 841(a)(1). The Defendant was found guilty by a jury on all three counts and was sentenced to 78 months in prison on each of the counts, the sentences to run concurrently, to be followed by 5 years of supervised release. In this appeal, the Defendant claims that multiple evidentiary errors prejudiced his trial, that the trial judge failed to properly instruct the jury on his theory of defense, and that, at the very least, his sentence must be vacated on the grounds of multiplicity of counts, reliance by the judge on improper information, and disparity with the sentences of co-conspirators. We find no merit in any of the Defendant's contentions and, therefore, affirm both the conviction and the sentence.

## I. FACTS

The drug transaction which forms the basis of the Defendant's conviction had its genesis when Peter Ithier, a Milwaukee resident, was charged with the sale of a controlled substance by federal agents. Ithier, in an attempt to reduce his sentence, agreed to cooperate with federal agents by leading them to other drug traffickers. One of those traffickers was Scott Steinfest, also a Milwaukee resident and an acquaintance of Ithier's. Ithier told Steinfest that Ithier had a customer, Raymond Melick (actually an agent with the Drug Enforcement Agency), who was interested in purchasing approximately $20,000 worth of cocaine. Steinfest agreed to see if he could arrange the sale and called Todd George, a Madison resident who had previously supplied Steinfest with controlled substances.

On November 20, 1987, Ithier, Melick, and Steinfest drove to Madison to consummate the deal. The three arranged to meet in the parking lot of a local K–Mart. From there they proceeded to East Main street where Todd George resided. Earlier that afternoon, George had received the cocaine, weighing in at 492 grams, from Andres, the person who regularly supplied George with marijuana and cocaine. On this particular occasion, Andres was accompanied by Leonardo Monzon, the Defendant. According to George, Andres told him that Monzon was to be in charge of this transaction. Thus, when a question arose as to the price that was to be charged for the cocaine, it was Monzon who made the final decision. Before the arrival of the Milwaukee contingent, George had taken 62 grams

of cocaine out of the main package and replaced it with an equal amount of vitamin C. George testified that the 62 grams were compensation for his role in the transaction and were taken with the acquiescence of Monzon. It was this distribution that formed the basis for Count 3 of the indictment.

At approximately 4:30 p.m., Ithier, Steinfest, and Melick arrived at George's residence. Steinfest went into the building to retrieve the cocaine while Ithier and Melick waited in the car. Steinfest walked up to the second floor and entered George's apartment. After Monzon was introduced —it is not clear whether he introduced himself or was introduced by George—Steinfest went to the living room table, where the cocaine had been placed, and broke off two chunks to keep for himself as part of his compensation. He then picked up the remainder of the cocaine and, after explaining to Monzon where he was going, went downstairs to exchange it for the $20,000 from Melick. Steinfest showed the cocaine to Agent Melick who then gave a prearranged signal to other officers to proceed to arrest Steinfest. Meanwhile, Todd George, who had followed Steinfest down the stairs, sensed that something had gone awry and headed for the basement, where officers eventually found him hiding. Other officers proceeded up the stairs to George's apartment where they apprehended Monzon. Monzon volunteered that he did not know George and stated that he was simply in the apartment watching T.V.

Steinfest, George, and Monzon were each charged with conspiracy to distribute cocaine, possession of cocaine with intent to distribute and distribution of cocaine. Steinfest and George pled guilty, agreed to testify against Monzon, and were sentenced to three years in prison. Monzon pled not guilty and, following his conviction on all three counts, was sentenced to 78 months in prison on each count, the sentences to run concurrently.

Monzon claims that multiple evidentiary errors were made by the trial court. First, he claims that his fifth amendment privilege against compelled self-incrimination was violated when the trial court allowed a police officer to testify to a statement made by Monzon shortly after his arrest. Second, Monzon alleges that the trial court erred in allowing another officer to testify as to a statement made to her by Steinfest just after his arrest. Third, Monzon believes that he suffered undue prejudice when the trial court admitted extrinsic evidence of his physical characteristics and prior bad acts. Monzon also claims that the trial court, by refusing to give two of his proffered jury instructions, failed to instruct the jury on his theory of defense. Finally, Monzon claims that his sentence must be vacated because: (1) the trial court relied upon improper inferences in sentencing him; (2) there was no justification for the disparity between his sentence and the sentences of George and Steinfest; and (3) Counts 2 and 3 of the indictment were multiplicitous since they charged the Defendant with separate crimes for what was, in reality, a single transaction.

## II. EVIDENTIARY ERRORS

### A.

Monzon claims that evidence was admitted at his trial in violation of his fifth amendment privilege against compelled self-incrimination. Immediately following his arrest, Monzon was taken to a squad car and, after being advised of his rights, was questioned by Agent Jeanne Tasch of the Drug Enforcement Agency. According to the report filed by Agent Tasch, the Defendant answered several of her questions and then asked to see an attorney, whereupon the questioning ceased. At some point while the Defendant was seated in the squad car, Officer Dan Roman asked the Defendant whether a green car parked in the driveway of the George residence belonged to him. Monzon responded that the car did belong to him, but has subsequently denied ownership. A search of the car turned up a parking ticket from Chicago's O'Hare Airport dated November 17, 1987, a scale suitable for weighing narcotics, and several marijuana cigarette butts,

each of which was introduced by the government at Monzon's trial.

Monzon claims that all of this evidence should have been suppressed because at the time Officer Roman asked him the question regarding ownership of the car, he had not yet been read his *Miranda* rights. Alternatively, the Defendant believes that if the conversation took place after Agent Tasch read him his rights, the evidence still should have been suppressed since questioning should have ceased once the Defendant asked to consult with an attorney. The trial court found that the question was asked after Monzon had been advised of his rights and refused to suppress the Defendant's statement.

The Government counters Monzon's claim with two arguments. First, the Government claims that the question asked by Officer Roman falls outside the ambit of *Miranda* protection because it was asked simply as part of an attempt to secure the area immediately surrounding the crime scene. The government would apparently have us analogize this question to the kind of routine booking questions such as name and address that have been held to fall outside of *Miranda's* protections. *See Rhode Island v. Innis*, 446 U.S. 291, 301, 100 S.Ct. 1682, 1689, 64 L.Ed.2d 297 (1980) (words and actions "normally attendant to arrest and custody" excluded from the definition of interrogation). The analogy fails. Routine booking questions are allowed because, to an objective observer, the questions are not "designed to elicit an incriminating response." *Id.* Where the police should know that a question is likely to elicit an incriminating response, that question cannot be asked absent *Miranda* warnings.

Officer Roman's question in this case clearly had incriminating potential. Officer Roman could not know at the time he questioned Monzon what the car might contain nor whether the car could be linked to Monzon absent the admission. Under those circumstances, we believe that Monzon should not have been questioned after he asked to speak with a lawyer. *See United States v. Downing*, 665 F.2d 404,

406 (1st Cir.1981) (defendant's fifth amendment rights were violated when police asked him what his keys belonged to and where his plane was located after the defendant asked to speak to his attorney).

Still, the trial judge properly admitted the evidence because the Defendant failed to advise the court that he had requested an attorney and did not bring to the court's attention the report of Agent Tasch. So far as the trial court knew, the Defendant was asked the question by Officer Roman after being advised of his rights and without any intervening barrier to further questioning. Where a defendant fails to make the trial court aware of circumstances surrounding evidence that the defendant wants suppressed, the defendant waives his right to rely on those circumstances in arguing for suppression on appeal. *United States v. Welsh*, 721 F.2d 1142, 1145 (7th Cir.1983). Thus, the trial judge did not abuse her discretion in admitting Officer Roman's testimony regarding Monzon's admission and the evidence that was subsequently adduced as a result of that admission.

### B.

Monzon's second claim of prejudicial error involves the testimony of Officer Tasch as to a statement made by Scott Steinfest shortly after his arrest. Steinfest told Tasch that he "obtained" the cocaine from a Cuban male. Steinfest subsequently became one of the government's chief witnesses against Monzon and, in the course of his trial testimony, stated that Todd George "handed" Steinfest the cocaine. The defense attempted to impeach Steinfest by portraying his trial testimony as a recent fabrication designed to cull favor with the government. It was to rebut that claim of recent fabrication that the government introduced, through Agent Tasch, Steinfest's hearsay statement regarding the Cuban male.

Under Rule 801(d)(1)(B) prior consistent statements of a declarant are admissible non-hearsay if four conditions are met. First, the declarant must testify at trial

and must be subject to cross-examination. *United States v. Harris,* 761 F.2d 394, 397 (7th Cir.1985). Second, the prior statement must be consistent with the declarant's trial testimony. *Id.* Third, the statement must be offered to rebut an express or implied charge of recent fabrication. *Id.; United States v. Andrade,* 788 F.2d 521, 533 (8th Cir.), *cert. denied,* 479 U.S. 963, 107 S.Ct. 462, 93 L.Ed.2d 408 (1986) (allegation of recent fabrication need not be express in order to justify Rule 801(d)(1)(B) exception). Finally, the statement must have been made before the declarant had a motive to fabricate. *Harris,* 761 F.2d at 399.

In this case, the Defendant claims that Steinfest's prior statement should not have been introduced because it was not consistent with his trial testimony and thus failed to meet the second requirement. Steinfest originally told Agent Tasch that he "obtained" the cocaine from a Cuban male. At trial, Steinfest testified that Todd George "handed" him the cocaine. It is inconsistent, the Defendant asserts, to say that a person obtains an item from one person and yet has that same item handed to him by someone else. We fail to see the inconsistency. It is perfectly consistent to say that the cocaine was handed to Steinfest by George, acting as a middleman, and yet obtained from a Cuban male, the ultimate supplier of the drugs. In any event, that is the way the trial judge viewed it when she admitted Agent Tasch's testimony and that decision clearly was not an abuse of discretion. *United States v. L'Allier,* 838 F.2d 234, 242 (7th Cir.1988) ("We will not disturb a district court's evidentiary ruling unless there is a clear showing of abuse of discretion.").

### C.

Defendant's final allegation of error regarding the trial judge's evidentiary rulings involves her decision to admit evidence of the Defendant's prior acts. In particu-lar, the Defendant claims it was prejudicial error to allow Officer Roman to testify that marijuana butts were found in the Defendant's car and to allow Officer Al Rickey to testify that he twice observed the Defendant—once after his arrest in this case and also eight months prior to the arrest—sporting a long pinky fingernail. Officer Rickey testified that growing a long pinky fingernail was a fad among cocaine users and traffickers. Defendant objected at trial, and in a pre-trial motion *in limine,* to all of this testimony, but those objections were overruled without explanation by the trial court.

Initially, the government contends that this testimony does not fall within the category of character evidence generally inadmissible at trial and thus need not meet the strictures of Rule 404(b).[1] Instead, the government contends that the marijuana and pinky fingernail testimony pertains to the same transaction or series of events as the offense charged and thus is not subject to the restrictions on character evidence. According to the government, the marijuana testimony was directly probative of the Defendant's involvement since "the jury was entitled to infer a connection between [Monzon's] possession of marijuana and his possession of other controlled substances." Similarly, the government contends that the pinky fingernail testimony was not extrinsic evidence covered by Fed.R.Evid. 404(b) since that evidence showed that "defendant bore physical characteristics often associated with cocaine users and/or traffickers."

The government is correct that evidence of other acts or crimes which are "intricately related to the facts of the case" are admissible without reference to Rule 404(b) so long as the probative value of the evidence outweighs its prejudicial impact. *United States v. Hawkins,* 823 F.2d 1020, 1023 (7th Cir.1987). In this case, however, neither the marijuana nor pinky fingernail

---

1. Rule 404(b) states that:

 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

testimony was intricately related to the facts of the case. The evidence here did not relate directly to the Defendant's motive or capacity to undertake the cocaine transaction, nor did it involve a separate uncharged criminal act undertaken in connection with the charged criminal activity. *See Id.* (evidence of conversation showing motive for criminal action intricately related to facts of case); *United States v. Brooks*, 670 F.2d 625, 628 (5th Cir.1982) (evidence of possession of large amount of marijuana not extrinsic evidence in trial on charge of possession of cocaine with intent to distribute since acts "arose out of the same transaction"). Instead, the marijuana and pinky fingernail testimony was classic character evidence designed to show that the defendant had a bad character and acted in conformity therewith. Such character evidence is admissible only if it meets the requirements of Rule 404(b).

In this circuit, evidence of other acts or crimes must meet a four-part test to be admissible under Rule 404(b). First, the evidence must be directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged. *United States v. Shackleford*, 738 F.2d 776, 779 (7th Cir.1984). Examples of the "other" matters that might be in issue in a case include "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed.R.Evid. 404(b). Second, the evidence must show that the other act is similar enough and close enough in time to be relevant to the matter in issue. *Shackleford*, 738 F.2d at 779. Third, the evidence must be such that the jury could find "that the act occurred and that the defendant was the actor," *Huddleston v. United States*, 485 U.S. 681, 108 S.Ct. 1496, 1501, 99 L.Ed.2d 771 (1988); it is no longer necessary to prove with "clear and convincing evidence" that the act occurred, as we formerly required. Finally, the evidence still is subject to the requirement of Rule 403 that its probative value is not substantially outweighed by the danger of unfair prejudice. *Shackleford*, 738 F.2d at 779.

The first count of the Defendant's indictment charged that the Defendant engaged in a conspiracy to distribute a controlled substance in violation of 21 U.S.C. § 846. Conspiracy to distribute is a specific intent crime; the government must show that the defendant conspired to distribute, with the *intent to distribute* a controlled substance, in order to prove guilt. *United States v. Liefer*, 778 F.2d 1236, 1243 (7th Cir.1985); *United States v. Manganellis*, 864 F.2d 528, 534 (7th Cir.1988). In cases involving specific intent crimes, intent is automatically in issue, regardless of whether the Defendant has made intent an issue in the case. *Liefer*, 778 F.2d at 1243; *United States v. Brantley*, 786 F.2d 1322, 1329 (7th Cir.), *cert. denied*, 477 U.S. 908, 106 S.Ct. 3284, 91 L.Ed.2d 572 (1986); *United States v. Gruttadauro*, 818 F.2d 1323, 1328 (7th Cir.1987). Thus, the marijuana and long pinky fingernail evidence met the first requirement of the test for admissibility since they were introduced to show the Defendant's intent, not his propensity to commit the crime.

Even where the crime charged is a specific intent crime, however, the evidence must meet the other three requirements if it is to be properly admitted. In this case, the only matter in issue for which the evidence could be introduced was the Defendant's intent to distribute the cocaine. The government has not shown, and we cannot think of, any way in which the marijuana or long pinky fingernail evidence was probative of that intent. This is not a case where the evidence sought to be introduced is so similar to the crime charged—for example, another act of distribution of cocaine for which the Defendant was not charged—that the relevance is clear. The only probative value of this evidence goes toward showing that a person of the Defendant's character is likely to have committed the crime, but that is exactly what Rule 404(b) prohibits. Moreover, even if one could view the evidence as probative of intent, the court failed to give a limiting instruction in connection with the introduction of this evidence. That failure heightened the probability that the jury would use the evidence not as proof of the Defen-

dant's intent, but as pure propensity evidence. Thus, since there was no evidence to show that the marijuana and long pinky fingernail were relevant to the matter in issue, we find that it was error for the court to admit the evidence.

Still, the trial court's error was harmless. An evidentiary error is harmless if the untainted evidence against the defendant is overwhelming or if the error had such slight effect that it could not have swayed the jury. *United States v. Manganellis*, at 539; *United States v. Swiatek*, 819 F.2d 721, 728 (7th Cir.), *cert. denied*, — U.S. ——, 108 S.Ct. 245, 98 L.Ed.2d 203 (1987). The evidence against the Defendant in this case was overwhelming. The combined testimony of Steinfest and George established that Monzon was one of the principals in this cocaine transaction. The outcome of this case thus depended solely on whether the jury chose to believe Steinfest's and George's testimony, which they apparently did, and it is highly unlikely that it was affected by the marijuana or long pinky fingernail evidence. Moreover, the evidence was actually consistent with the Defendant's theory of the case. The Defendant's claim was that he was not a participant in the transaction but was simply at the apartment to purchase cocaine from George. The marijuana and pinky fingernail testimony was consistent with that theory since the evidence was probative of Defendant's use of controlled substances. Thus, we cannot say that the Defendant suffered prejudicial harm when the trial court erroneously admitted the evidence in question.

In sum, the Defendant has not shown that the judge's evidentiary determinations amount to reversible error. The trial judge properly refused to suppress the Defendant's admission relating to the car, given the Defendant's waiver, and properly admitted evidence of Steinfest's prior consistent statement. The trial judge erred in admitting the evidence of marijuana butts found in the Defendant's car and Monzon's long pinky fingernail, but that error was harmless.

## III. FAILURE TO INSTRUCT

Monzon claims that the trial court violated his fifth amendment right to have the jury consider his theory of defense when the court refused to give two of his tendered instructions. First, the court refused to instruct the jury that:

> Presence at the scene of the crime, association and activity with co-conspirators, or knowledge that a crime is being committed are not sufficient, in and of themselves, to establish the defendant's guilt.

Instead, the court opted to give the instruction recommended by the *Federal Criminal Jury Instructions of the Seventh Circuit* which state that "presence at the scene of a crime and knowledge that a crime is being committed are not sufficient to establish the Defendant's guilt."

It is undisputed that the Defendant has the right to have the jury consider any theory of defense which is supported by law and by some evidence in the record. *United States v. Boucher*, 796 F.2d 972, 975 (7th Cir.1986). However, the Defendant is entitled to an instruction on his theory only if he can show that: (1) the instruction is a correct statement of the law; (2) the theory of defense is supported by the evidence; (3) the theory of defense is not a part of the charge; and (4) failure to include an instruction on the Defendant's theory of defense in the jury charge would deny the Defendant a fair trial. *United States v. Douglas*, 818 F.2d 1317, 1321 (7th Cir.1987).

In this case, the Defendant's proposed "presence" instruction failed to meet both the second and third requirements. The Defendant introduced no evidence to support his theory that he was simply a bystander to this drug transaction. Even if there were some evidence to that effect, we believe that the Defendant's theory was adequately covered by the instruction given by the trial court. The deletion of the words "association and activity" add almost nothing to the substance of the instruction as given; if the jury really believed the Defendant was present only to

buy cocaine, it would have acquitted under either of the instructions set out above.

The Defendant also claims that the trial court erred when it refused to give this instruction:

> If a witness is shown knowingly to have testified falsely concerning any material matter, you have a right to distrust such witness' testimony in other particulars; and you may reject all the testimony of that witness or give it such credibility as you may think it deserves.

Again, the court opted for the instruction favored by Seventh Circuit pattern instructions on the issue of prior inconsistent statements: "evidence that on some former occasion a witness made a statement inconsistent with his testimony in this case may be considered by you only in determining the credibility of the witness and not to establish the truth of the matters contained in the prior statement."

 The trial court did not err in refusing to give the Defendant's "Falsus in uno, falsus in omnibus" instruction. First, the instruction is not a correct statement of the law. The Second Circuit has explicitly rejected the instruction as inconsistent with life's experience, *United States v. Weinstein*, 452 F.2d 704, 713 (2d Cir.1971), *cert. denied*, 406 U.S. 917, 92 S.Ct. 1766, 32 L.Ed.2d 116 (1972), and our circuit's pattern instructions implicitly rejected it by excluding the instruction in the most recent edition. Also, the instruction actually given by the trial court in its charge adequately expressed the Defendant's theory of defense. The Defendant made it plain in his summation that this case depended solely on the credibility of Steinfest and George. The instruction actually given by the court told the jury that they should consider inconsistencies in witness testimony in determining witness credibility. Thus, the court's instruction, in effect, told the jury that they should consider inconsistencies in Steinfest's and George's testimony and should credit that testimony in light of those inconsistencies. The Defendant had a right to no more.

## IV. SENTENCING

The Defendant alleges that the trial court made three separate errors in sentencing him to serve 78 months in prison. First, the Defendant claims that the judge relied on improper information in determining his sentence. Second, the Defendant believes that there is no justification for the disparity between the sentence he received and the sentences given to Steinfest and George. Finally, the Defendant asserts that Counts 2 and 3 of his indictment were multiplicitous because the acts for which he was indicted arose out of a single transaction, and thus could not be the subject of multiple penalties. We will deal with each of these contentions in turn.

### A.

In this circuit we have made clear that "[a] sentence that is within the limits established by the statute under which it is imposed will not be vacated upon review unless the sentencing judge relied upon improper considerations or unreliable information in exercising his [or her] discretion or failed to exercise any discretion at all in imposing the sentence." *United States v. Harris*, 761 F.2d 394, 403 (7th Cir.1985); *United States v. Nesbitt*, 852 F.2d 1502, 1522 (7th Cir.), *cert. denied*, — U.S. —, 109 S.Ct. 808, 102 L.Ed.2d 798 (1989). In this case, the Defendant claims that the judge relied on two improper inferences in deciding what sentence to impose: (1) an inference that the Defendant played a major role in the transaction and was not simply a "mule," the characterization given to the Defendant by his counsel at the sentencing hearing, and (2) an inference that the Defendant physically brought the cocaine from Florida to Madison.

 There was certainly nothing improper about the court's inference that the Defendant played a leading role in this transaction. Todd George testified that the Defendant delivered the cocaine, set the price, remained to collect the proceeds, and was generally in charge of the deal. Also, there was evidence that the Defendant appeared confident following his arrest and attempted to coordinate the ac-

tions of George, Steinfest, and himself while the three shared a jail cell. Thus, the judge did not abuse her discretion in sentencing the Defendant as a major player in this transaction.

 Whether it was improper for the trial court to infer that Monzon brought the cocaine from Florida is a much closer question. We have read the entire record and the only evidence that the Defendant was the courier for the drugs, apart from the fact that the Defendant was a resident of Florida, was the parking receipt from O'Hare Airport in Chicago. We find it impossible to infer solely from the parking receipt that the Defendant transported the cocaine from Florida to Madison. Nevertheless, the trial judge's improper inference was harmless error. We do not believe that Judge Crabb's improper reference to transportation of the cocaine affected the Defendant's sentence. There was ample evidence in the record to support the Defendant's sentence of 78 months, a sentence in the midrange of the sentences allowed by the statute.

### B.

 The Defendant claims that the trial judge erred in sentencing him to 78 months in prison while only sentencing Steinfest and George to three years each since there were no factors supporting such a disparity. The Defendant has a steep, uphill struggle with regard to this claim since it is settled, at least in this circuit, that disparity alone does not make out a claim of abuse of sentencing discretion. *United States v. Neyens,* 831 F.2d 156, 159 (7th Cir.1987). All that is required of the sentencing judge is that she give due consideration to each of the sentences. In this case, the sentencing judge did give due consideration to Monzon's sentence. The judge cited two principal reasons for giving the Defendant a greater sentence than Steinfest and George. First, the judge took into account that Steinfest and George cooperated with the government while Monzon was steadfast in refusing to recognize his crimes. *See United States v. Ford,* 840 F.2d 460, 467 (7th Cir.1988) ("one relevant

factor for the district court to consider is the defendant's refusal to recognize his offenses"). Second, the judge felt that Monzon was deserving of a greater sentence since he supervised the transaction. *See Neyens,* 831 F.2d at 159 ("We have recognized that considerations of the extent and nature of a defendant's role in a scheme is a sound basis for disparate sentences among co-defendants."); *Nesbitt,* 852 F.2d at 1522 (same). Thus, the judge did not abuse her discretion in imposing disparate sentences on Monzon and his co-conspirators.

### C.

 Finally, the Defendant contends that counts 2 and 3 of his indictment were multiplicitous. Count 2 charged the Defendant with possession of cocaine with intent to distribute based on the 492 grams of cocaine that Steinfest received from the Defendant and Todd George. Count 3 charged the Defendant with intentional distribution of cocaine. This charge was based on the distribution of 62 grams made to George as compensation for his role in the transaction. According to the Defendant, these counts were multiplicitous since they arose out of the very same acts and thus charged the Defendant twice for the same crime.

The Defendant cites *United States v. Palafox,* 764 F.2d 558 (9th Cir.1985), as support for this proposition. The defendant in *Palafox,* like the Defendant here, was charged with both possession with intent to distribute a controlled substance and distribution of a controlled substance. *Id.* at 559. Both charges stemmed from a single meeting between Palafox and a government agent. Palafox carried to the meeting a package containing heroin and gave the agent a small amount of the substance out of the package as a sample. Immediately thereafter, Palafox was arrested. Palafox was charged with distribution based on the sample he gave to the agent and with possession with intent to distribute the remaining portion of the heroin.

The Ninth Circuit held that while Palafox could be charged with both crimes, he could not be sentenced for both. After examining the relevant legislative history and Supreme Court precedent, the court stated that: "when more than one offense arises under § 841(a)(1) from a single criminal undertaking involving drugs, and each offense is committed at virtually the same time, in the same place, and with the same participants, the punishments should not be compounded." *Id.* at 562. Nevertheless, other cases have shown that where different purities of the controlled substance are involved, *United States v. Privett,* 443 F.2d 528, 531 (9th Cir.1971), *United States v. Griffin,* 765 F.2d 677, 683 (7th Cir.1985), different participants are involved, *United States v. Elliott,* 849 F.2d 886, 890 (4th Cir.1988), or the transactions occur at different times, *Id.,* the *Palafox* rule does not apply and separate sentences are permissible.[2]

In contrast to *Palafox,* the distribution in this case was made to a different person than the person who was ultimately to receive the substance. Also, like *Privett* and *Griffin,* different purities were involved in the cocaine distributed and the cocaine in possession of the Defendant. Under those circumstances, the charges were not multiplicitous and the Defendant was properly sentenced for both crimes.

## V.

For all the reasons discussed above, the judgment and sentence of the district court are AFFIRMED.

---

**2.** This analysis is consistent with this Circuit's test for multiplicity: "whether each count 'requires proof of a fact which the other does not.'" *United States v. Marquardt,* 786 F.2d 771, 778 (7th Cir.1986).