CHRISTEN, Circuit Judge,
dissenting:
The decision issued by our court today announces a new rule permitting adverse credibility findings to wash over from one asylum claim to another, whether inconsistencies that give rise to an adverse credibility finding “go to the heart of’ the separate asylum claim, or not. Because this new rule cannot be squared with this circuit’s pre-REAL ID Act case law mandating that adverse credibility findings must go to the heart of an applicant’s claim, I respectfully dissent.
I. The BIA Erred By Upholding an Adverse Credibility Finding that Did Not Go “To the Heart” of Li’s Pre-REAL ID Act Claim.
Li, a citizen of China, presented two claims for asylum to the immigration court. One was based on undergoing a forced abortion; the other was based on religious persecution for participating in a home church. Regarding the forced abortion claim, Li testified that she discovered she was pregnant a month after her husband’s death. She was told by authorities that she would not be permitted to give birth to a second child because she was an unmarried woman with one child. Li escaped to her aunt’s house in the countryside, but several months later she was *1169 discovered and forced to have a late-term abortion. According to her testimony, Li was tied to the hospital bed, her unborn child was killed with a needle, and she delivered the stillborn child.
Regarding the religious persecution claim, Li testified that in April 2003 she became involved in a home church, and in November 2004 ■ the police raided the church, arrested her, and detained her for ten days. She testified that she applied for a passport in part because of religious persecution. She also testified that she had never been baptized. The IJ found that Li lacked credibility for two reasons. First, the IJ found that Li provided contradictory testimony regarding the circumstances under which she obtained her passport because she applied for the passport in September 2003, before her alleged arrest in November 2004. Second, the IJ found that Li was inconsistent regarding why she was never baptized. Her stated reason was that she believed she needed to be a practitioner for six months to a year before she could be baptized. But she also testified that she was a member of the home church from April 2003 until her arrest in November 2004, a period of approximately nineteen months.
After finding that Li’s testimony concerning her religious persecution claim was not credible, the IJ dismissed both of her asylum claims. The IJ made no findings at all with respect to the merits of the asylum claim based on forced abortion.
The BLA affirmed the denial of Li’s petition, citing Lopez-Umanzor v. Gonzales, 405 F.3d 1049 (9th Cir.2005), as authority for what it called “the Ninth Circuit’s well-settled case law that a person who is deemed unbelievable as to one material fact may be disbelieved in all other respects.” But the BIA miscited LopeZ-Umanzor, which actually involved a petitioner’s claim for cancellation of removal based on a denial of due process. The petitioner in that case testified she was a victim of' domestic violence and offered medical records to corroborate the injuries she had sustained, id. at 1050-51, but she was not permitted to introduce expert testimony on domestic violence, id. at 1052, 1056. The posture of the case required the IJ to assess the petitioner’s credibility and weigh it against that of a police officer who testified that petitioner was involved in drug trafficking. Id. at 1053. Our court was clear that if the agency properly concluded the petitioner was a drug trafficker, she was ineligible for cancellation of removal. Id. at 1059. But because the IJ’s finding that the petitioner lacked credibility regarding domestic violence rested on the IJ’s “personal speculation, bias, conjecture, and prejudgment,” id., and because the IJ’s “preconceived view of her credibility on that point” may have affected his resolution of the drug-related credibility dispute, our court decided that petitioner established prejudice, id. at 1058. The court remanded for a new credibility determination, suggesting that a different judicial officer should hear the case. Id. at 1059. Lopez-Umanzor did not discuss exporting an adverse credibility finding from one asylum theory to a separate and unrelated asylum theory.
Underscoring that Lopez-Umanzor did not settle .the question of credibility spill over in the asylum context, our court addressed this issue twice after it published Lopez-Umanzor, and, reached opposite outcomes in unpublished decisions. See Wang v. Mukasey, 262 Fed.Appx. 798, 800 (9th Cir.2008); Zhu v. Mukasey, 261 Fed.Appx. 43, 44 (9th Cir.2007). In Wang, our court held that one adequately-supported adverse credibility determination was sufficient to uphold rejection of two different claims for asylum. 262 Fed.Appx. at 800-01. But in Zhu, our court granted a petition for review and withholding of removal where the IJ had non-speculative reasons *1170 for disbelieving Zhu’s political persecution claim and the inconsistencies “did not go to the heart of Zhu’s alternative claim that his wife had suffered a forced abortion.” 261 Fed.Appx. at 44 (citation omitted).
The rule announced by the court today, that an adverse credibility determination on any theory of asylum is sufficient to dismiss an asylum petition based on a completely different theory, defies well-settled pre-REAL ID Act precedent that adverse credibility findings must go to the heart of a petitioner’s claim. See Singh v. Gonzales, 439 F.3d 1100, 1105 (9th Cir.2006) (“[T]he IJ or BIA must identify ‘specific, cogent reasons’ for an adverse credibility finding, and the reasons must be substantial and legitimately connected to the finding. This means that the reason identified must ‘strike at the heart of the claim’ for asylum.” (citations omitted)).
Other circuits have been unwilling to allow one adverse credibility determination in an immigration case to dictate the outcome of unrelated claims. For example, the Seventh Circuit vacated and remanded a Convention Against Torture (“CAT”) determination, writing that “[w]e are not comfortable with allowing a negative credibility determination in the asylum context to wash over the torture claim; especially when the prior adverse credibility determination is not necessarily significant in this situation.” Mansour v. INS, 230 F.3d 902, 908 (7th Cir.2000).[1] The Seventh Circuit has also described the doctrine relied upon by the majority, falsus in uno, falsus in omnibus (false in one thing, false in all things), as “discredited,” Kadia v. Gonzales, 501 F.3d 817, 821 (7th Cir.2007), and endorsed the characterization of it as “absolutely false as a maxim of life,” United States v. Schimmel, 943 F.2d 802, 808 (7th Cir.1991). In Kadia, Judge Posner explained:
Human memory is selective as well as fallible, and the mistakes that witnesses make in all innocence must be distinguished from slips that, whether or not they go to the core of the witness’s testimony, show that the witness is a liar or his memory completely unreliable.
501 F.3d at 822.
Several circuits limit the preclusive effect of unrelated adverse credibility determinations when considering motions to reopen asylum claims based on changed circumstances. The Third Circuit observed, “[n]or does one adverse credibility finding beget another. On the contrary, an IJ must justify each adverse credibility finding with statements or record evidence specifically related to the issue under consideration.” Guo v. Ashcroft, 386 F.3d 556, 562 (3d Cir.2004). The Second Circuit has also considered and rejected the proposition that an “adverse credibility determination with respect to some of an alien’s claims ... necessarily infects related but essentially freestanding claims made by the same applicant in the course of the same petition.” Paul v. Gonzales, 444 F.3d 148, 154 (2d Cir.2006). In Paul, the Second Circuit held a petitioner could prevail on a theory of future persecution, despite an adverse credibility ruling regarding past persecution, so long as the factual predicate of the future persecution claim was independent of the testimony *1171 the IJ found not credible. Id.; see also Gebreeyesus v. Gonzales, 482 F.3d 952, 955 (7th Cir.2007) (adopting the holding from Paul that an adverse credibility determination did not control a claim of future persecution based on independent facts).
There are sound reasons for requiring that each asylum claim be considered on its merits. First, immigration cases involve uniquely difficult problems of proof. See Singh v. Holder, 638 F.3d 1264, 1270 (9th Cir.2011) (“Asylum cases differ from ordinary civil cases in that the events happen in foreign countries, and the expense and difficulty of obtaining corroboration can be overwhelming.”); Sangha v. INS, 103 F.3d 1482, 1487 (9th Cir.1997) (“Because asylum eases are inherently difficult to prove, an applicant may establish his case through his own testimony alone.” (citation omitted)). Second, immigration claims are also notorious for involving long delays. The 2013 data from Syracuse University’s Transactional Records Access Clearinghouse shows that Immigration Court proceedings — not including appeals — took an average of 580 days from filing to completion.[2] Given the amount of time that typically passes between filing an immigration petition and receiving a hearing, it is not surprising that inconsistencies are sometimes noted between an application and a petitioner’s testimony. Singh, 439 F.3d at 1105 (“An IJ must also afford petitioners a chance to explain inconsistencies, and must address these explanations.” (citations omitted)). Petitioners may provide corroborating evidence where their testimony alone is deemed insufficient, but individuals who flee persecution are not always able to assemble corroborating documentation as they make their escape, and the logistical problems associated with trying to obtain corroborating documentation after the fact are easy to predict.
The majority cites the Second Circuit’s decision in Siewe v. Gonzales, 480 F.3d 160 (2d Cir.2007), and summarizes its holding as “an I J’s application of the maxim falsus in uno, falsus in omnibus ... may at times be [correct].” But what the Second Circuit actually held is that the application of the maxim “may at times be appropriate” to “discredit evidence that does not benefit from corroboration or authentication independent of the petitioner’s own credibility” and to “influence the IJ’s assessment of the credibility of the corroborative evidence itself.” Id. (emphasis in original). The Second Circuit went on to enumerate at least five categories in which application of the maxim is not appropriate in the immigration context: (1) a finding that the petitioner adduced false evidence does not excuse the assessment of evidence that is independently corroborated; (2) the presentation of fraudulent documents that were created to escape persecution (which, as the court noted, may actually tend to support an alien’s application); (3) false evidence that is wholly ancillary to the alien’s claim may be insufficient by itself to warrant a conclusion that the entirety of the alien’s uncorroborated material evidence is false; (4) false statements made during an airport interview, depending on the circumstances, may not be a sufficient ground for invoking the maxim; and (5) an alien’s submission of documentary evidence that the alien does not. know, and has no reason to know, is inauthentic, is no basis for falsus in uno. Id. at 170-71. Even when none of these *1172 exceptions applies, Siewe at best endorses use of the maxim where testimony lacks corroboration or authentication. The rule announced today has a far greater sweep: if one asylum claim has inconsistencies deemed material, IJs will not need to consider alternative asylum claims at all. And on review, our court will have no way of knowing whether a petitioner produced corroboration or authentication in support of an alternative claim that was sufficient to overcome real or perceived inconsistencies in her evidence. There will be no findings to review.
Our pre-REAL ID Act case law recognizes the logistical difficulties inherent in immigration cases and established limitations on the types of inconsistencies that provide sufficient support for adverse credibility determinations. Assessing claims on their merits and requiring “independent, specific, and cogent” reasons for adverse credibility determinations as to each claim adheres to our circuit’s pre-REAL ID Act rule that adverse credibility determinations must be based only on inconsistencies that go to the heart of the petitioner’s claim. This rule does nothing more than insure that each basis for asylum is given fair consideration. Here, it requires that whether or not Li was able to provide testimony or corroboration sufficient to convince the IJ that she had been the victim of persecution based on her religious beliefs, she was entitled to a merits ruling on her other asylum claim.
No court will determine whether Li is entitled to asylum as a refugee who was forced to undergo an abortion because the immigration courts addressed her religious persecution claim first, decided there were inconsistencies in her testimony that she was not able to sufficiently explain, and dismissed her forced abortion claim without ruling on its merits. But whether Li applied for a passport in response to being arrested for her home church activities, whether she was baptized in China, or had a good explanation for not being baptized in China, are all questions that have nothing to do with whether she was forced to undergo an abortion. As the majority acknowledges, these inconsistencies “do not touch upon her forced abortion claim.” They certainly do not go to the heart of it.
Unfortunately, under the new rule announced today, many more applicants will see their asylum claims dismissed, as Li’s was, without a merits ruling from any court.
II. Conclusion
For the preceding reasons, I would grant the petition for review and remand this case for consideration of Li’s asylum claim based on forced abortion and her claim for withholding of removal.

. Mansour involved a petitioner who moved to reopen proceedings based on a new CAT claim after the IJ had found him not credible and denied his asylum claim. The court further wrote that “the BIA’s adverse credibility determination in the asylum context seems to overshadow its analysis of Mansour's torture claim. The BIA in a minimalistic and non-detailed manner addressed Mansour's torture claim; leaving us to ponder whether the BIA sufficiently focused on this claim or merely .concluded it was not viable because of its determination that Mansour's prior testimony on the asylum issue was not credible.” 230 F.3d at 908.

. Immigration Court Processing Times by Charge, TRAC Immigration, http://trac.syr. edu/phptools/immigration/court_backlog/ court_proctime_charge.php (select "What to tabulate: Average Days,” "Charge Type: Immigration,” and "State: Entire US”) (last visited Dec. 12, 2013). Data computed by fiscal year.