**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Ronald WINDSOR, Defendant–
Appellant.**

**No. 91–1650.**

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 15, 1992.

Decided Dec. 9, 1992.

John W. Vaudreuil (argued), Daniel P. Bach, Asst. U.S. Attys., Madison, WI, for plaintiff-appellee.

Mary E. Gentile, Chicago, IL (argued), for defendant-appellant.

Before WOOD, JR.,* COFFEY, Circuit Judges, and CURRAN,** District Judge.

CURRAN, District Judge.

Ronald Windsor appeals from a judgment of conviction on one count of aggravated bank robbery in violation of 18 U.S.C. § 2113(a) and (d).[1] On January 23, 1991, a

---

* Judge Wood, Jr. assumed senior status on January 16, 1992, which was after oral argument in this case.

** The Honorable Thomas J. Curran, District Judge for the Eastern District of Wisconsin, is sitting by designation.

1. The version of Section 2113 of Title 18 of the United States Code in effect at the time of Windsor's violation provides, in relevant part, that:

(a) Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association; or

Whoever enters or attempts to enter any bank, credit union, or any savings and loan association, or any building used in whole or in part as a bank, credit union, or as a savings and loan association, with intent to commit in such bank, credit union, or in such savings and loan association, or building, or part thereof, so used, any felony affecting such bank, credit union, or such savings and loan association and in violation of any statute of the United States, or any larceny—

Shall be fined not more than $5,000 or imprisoned not more than twenty years, or both.

. . . .

(d) Whoever, in committing or in attempting to commit, any offense defined in subsections (a) and (b) of this section, assaults any

jury returned a verdict of guilty on a one-count charge. The district court denied Windsor's postrial motions for judgment of acquittal notwithstanding the verdict and for a new trial. Windsor was sentenced to serve twenty-five years in prison followed by five years of supervised release and to pay restitution of $6,267.00 and a $50 special assessment.

Windsor presents four issues for review:

1. Whether failure to instruct the jury as to the lesser included offense of bank robbery was plain error.

2. Whether the Defendant's Sixth Amendment right to effective assistance of counsel was violated by appointed counsel.

3. Whether it was abuse of discretion for the trial court to deny the Defendant's motion for a continuance.

4. Whether the jury was improperly instructed regarding the enhancement provision of the bank robbery statute.

We affirm.

On May 29, 1990, while enrolled in the federal Witness Protection Program and while on parole for another offense, Ronald Windsor entered the Arbor Hills Branch of Bank One in Madison, Wisconsin. He pointed a pellet gun at two of the tellers on duty and demanded all of the money in their teller drawers. He warned a third teller that he had a weapon and ordered her to stay in a coin counting room. He fled the bank with $7,920.00 in a bag.

Windsor then met his girlfriend Lena Shohet at a local shopping mall. The couple and Shohet's two children then traveled by cab to Beloit, Wisconsin and from there traveled by cab to Toledo, Ohio. Shohet and her children returned to Madison, but Windsor stayed on and, about three weeks later, entered an Ohio bank and told a banker to call the F.B.I. because he had committed the Madison bank robbery.

After being returned to Madison by federal marshals, Windsor was arraigned and attorney James Hublou was appointed to represent him. Hublou filed several discovery motions, a motion for closure, and a notice of intention to present an insanity defense. The trial was continued so that Windsor could undergo mental examinations and to permit time for production of the discovery sought—some of which related to the Witness Protection Program.

At the January 11, 1991, final pretrial conference, the defendant and his counsel asked that Attorney Hublou be allowed to withdraw. During a January 16, 1991, hearing on this motion the magistrate found that Windsor had made a knowing and voluntary waiver of his right to counsel, so he granted the motion to withdraw and appointed Hublou as standby counsel. The motion for closure was denied.

After the defendant's motion for a continuance was denied, a two-day trial commenced on January 22, 1991. As the trial began, Windsor withdrew his insanity defense. He called no witnesses in his defense. In his closing argument he conceded that the government had met its burden with regard to the first three elements of the offense,[2] but argued that the prosecution had failed to prove the fourth element beyond a reasonable doubt. Nevertheless, the jury found Windsor guilty.

■ Having been convicted of robbing a bank with a dangerous weapon, Windsor

person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device, shall be fined not more than $10,000 or imprisoned not more than twenty-five years, or both.

18 U.S.C.A. § 2113(a) & (d) (West Supp.1991).

2. The jury was instructed that:

To sustain the charge of aggravated bank robbery the Government must prove each of the following elements beyond a reasonable doubt. First, the defendant took from the person or presence of another money belonging to or in the care, custody, control, man-agement or possession of Bank One, Madison, Wisconsin.

Second, at the time charged in the indictment, Bank One, Madison, Wisconsin, had its deposits insured by the Federal Deposit Insurance Corporation.

Third, the defendant took or attempted to take such money by means of force and violence or by intimidation.

And fourth, the defendant put in jeopardy the lives of persons in and around the bank by the use of a dangerous weapon while committing or attempting to commit a theft.

now contends that the court's failure to instruct the jury on the lesser included offense of bank robbery was plain error. Despite a defendant's failure to object to the jury instructions as given at trial, the plain error doctrine permits a court to correct defects affecting substantial rights. *See* Federal Rule of Criminal Procedure 52(b). In *United States v. Schimmel*, 943 F.2d 802 (7th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1211, 117 L.Ed.2d 450 (1992), this court explained that:

> A plain error is not just one that is conspicuous but one whose correction is necessary to prevent a "miscarriage of justice," *United States v. Young,* 470 U.S. 1, 15 and n. 12, 105 S.Ct. 1038, 1046 and n. 12, 84 L.Ed.2d 1 (1985), and therefore **"it is the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court,"** *Henderson v. Kibbe,* 431 U.S. 145, 154, 97 S.Ct. 1730, 1736, 52 L.Ed.2d 203 (1977).... [T]here is no miscarriage of justice if the defendant's guilt is so clear that he would certainly have been convicted even if the error had never been committed; hence "plain error must be of such a great magnitude that it probably changed the outcome of the trial." *United States v. Douglas,* 818 F.2d 1317, 1320 (7th Cir.1987). *United States v. Kerley,* 838 F.2d 932, 937 (7th Cir. 1988) (citations omitted).

*Schimmel,* 943 F.2d at 809. *See also United States v. Leichtnam,* 948 F.2d 370, 375 (7th Cir.1991).

■ Rule 31(c) of the Federal Rules of Criminal Procedure provides that a defendant may be found guilty of an offense "necessarily included in the offense charged." The Supreme Court has held that an offense is "necessarily included" under this Rule only if the elements of that offense are a subset of the elements of the charged offense. *See Schmuck v. United States,* 489 U.S. 705, 716, 109 S.Ct. 1443, 1450, 103 L.Ed.2d 734 (1989). In this case, there is no question that the elements of bank robbery are a subset of the elements of bank robbery with a dangerous weapon. The use of the dangerous weapon to put lives in jeopardy is an enhancement provision. However, contrary to Windsor's position, meeting the elements test alone does not automatically entitle a defendant to have the jury instructed on the lesser included offense.

■ A defendant is entitled to a lesser included offense instruction only if the evidence would permit a rational jury to find guilt under the lesser charge and to acquit on the charge alleged. *See United States v. Henson,* 945 F.2d 430, 440 (1st Cir.1991); *United States v. Barrientos,* 758 F.2d 1152, 1158 (7th Cir.1985), *cert. denied,* 474 U.S. 1062, 106 S.Ct. 810, 88 L.Ed.2d 785 (1986). At Windsor's trial, the evidence was overwhelming that Windsor used a dangerous weapon to rob the bank and that he put bank personnel in fear for their lives. Two tellers testified that Windsor pointed his gun at them; another said he threatened to use the gun. Their testimony was uncontroverted. Even though the gun was a relatively low powered gun, there is nothing in the record to establish that the tellers knew that the gun might not have the firepower to kill them.[3] Under these circumstances, we do not find that the district court's failure to instruct on the lesser included offense of bank robbery was plain error.

■ Next, Windsor argues that his Sixth Amendment right to effective assistance of counsel was violated because his appointed counsel failed to tender the lesser included offense instruction. Pursuant to the trial court's pretrial order, counsel for both sides submitted proposed jury instructions about five months in advance of the Janu-

---

**3.** If the appearance of a weapon is capable of making the average person think that his or her life is in jeopardy, it is no defense that the gun is merely a toy, *see, e.g., United States v. Medved,* 905 F.2d 935, 939–40 (6th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 997, 112 L.Ed.2d 1080 (1991); or inoperable, *see, e.g.,* *United States v. York,* 830 F.2d 885, 891 (8th Cir.1987), *cert. denied,* 484 U.S. 1074, 108 S.Ct. 1047, 98 L.Ed.2d 1010 (1988); or unloaded, *see, e.g., McLaughlin v. United States,* 476 U.S. 16, 17–18, 106 S.Ct. 1677, 1678, 90 L.Ed.2d 15 (1986).

ary, 1991, trial. At the time instructions were submitted Attorney Hublou was still serving as Windsor's appointed counsel. However, at that time the defendant was proceeding with an insanity defense. The insanity defense was not dropped until the day of trial, and by that time Windsor had exercised his right to represent himself.

■ This court knows of no constitutional right to effective assistance of standby counsel. As the word "standby" implies, standby counsel is merely to be available in case the court determines that the defendant is no longer able to represent himself or in case the defendant chooses to consult an attorney. A defendant who has elected to represent himself "cannot thereafter complain that the quality of his own defense amounted to a denial of 'effective assistance of counsel.'" *Faretta v. California,* 422 U.S. 806, 834–35 n. 46, 95 S.Ct. 2525, 2541 n. 46, 45 L.Ed.2d 562 (1975). *See also Prihoda v. McCaughtry,* 910 F.2d 1379, 1385, 1386 (7th Cir.1990). But, even if Windsor was entitled to effective assistance throughout the course of these proceedings, the assistance he received was not constitutionally deficient.

Windsor did not raise the claim of ineffective assistance of Attorney Hublou in the district court. Nevertheless, the record, which includes transcripts of pretrial hearings and the trial itself, is sufficient. No extrinsic evidence has been submitted. Therefore, this court can rule on this issue without remand. *See United States v. Hubbard,* 929 F.2d 307, 311 (7th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 206, 116 L.Ed.2d 165 and by —— U.S. ——, 112 S.Ct. 309, 116 L.Ed.2d 252 (1991); *United States v. Taglia,* 922 F.2d 413, 418 (7th Cir.), *cert. denied sub nom. McDonnell v. United States,* —— U.S. ——, 111 S.Ct. 2040, 114 L.Ed.2d 125 (1991).

In *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court said that, to prevail on a claim of ineffective assistance of counsel, a defendant must establish: (1) that the attorney's performance was deficient, and (2) that, but for the attorney's deficient performance, the result would have been

different. *Id.* at 684, 104 S.Ct. at 2062–63. Windsor meets neither prong of this *Strickland* test. The only specific deficiency he identifies is Hublou's failure to submit a lesser included offense instruction. As explained above, Windsor was not absolutely entitled to such an instruction. Thus, it was not unreasonable strategy for Hublou not to offer such an instruction while Windsor still wished to pursue an insanity defense. *See Taglia,* 922 F.2d at 417–18 ("When the only record on which a claim of ineffective assistance is based is the trial record, every indulgence will be given to the possibility that a seeming lapse or error by defense counsel was in fact a tactical move, flawed only by hindsight."). Once Windsor abandoned that defense, it is highly unlikely that giving the lesser included offense instruction would have resulted in an acquittal on the charged offense. The evidence against Windsor was too strong. Therefore, we conclude that Windsor was not deprived of effective assistance of counsel and we will not reverse on this ground.

■ The third challenge to his conviction mounted by Windsor is that the trial court abused its discretion in not granting his motion for a continuance. This motion was filed the day after Windsor waived his right to counsel and five days before the start of trial. In asking for a postponement, the defendant argued that he needed additional time to prepare for his self-representation.

■ The district court has broad discretion on the issue of continuances. *See Morris v. Slappy,* 461 U.S. 1, 11, 103 S.Ct. 1610, 1616, 75 L.Ed.2d 610 (1983). A court of appeals will not overturn a trial court's denial of a continuance unless the trial court clearly has abused its discretion. Continuances are not favored and should be granted only when a compelling reason has been shown. *See United States v. Weisman,* 858 F.2d 389, 391 (8th Cir.1988), *cert. denied,* 489 U.S. 1071, 109 S.Ct. 1353, 103 L.Ed.2d 820 (1989). Abuse of discretion is determined by looking at the particular circumstances of the case. *See Ungar*

*v. Sarafite,* 376 U.S. 575, 589, 84 S.Ct. 841, 849, 11 L.Ed.2d 921 (1964).

 Courts have identified several factors to be examined by the trial court when exercising its discretion. These factors include: the time required and already permitted for trial preparation; the diligence of the moving party; the conduct of the other party; the effect of delay; the reasons the movant has given for needing a continuance; the likelihood that the continuance would have satisfied the movant's need; the inconvenience to the court, opposing party, and witnesses; and the extent to which the movant would be harmed by denying the continuance. *See, e.g., United States v. Tham,* 948 F.2d 1107, 1112 (9th Cir.1991); *United States v. Ware,* 890 F.2d 1008, 1010 (8th Cir.1989).

In this case the trial judge found that the defendant had been provided with over 5,000 pages of discovery and Brady material. The judge also informed the parties that, although the government had not made a timely disclosure of documents bearing on the testimony of a proposed expert witness whom the government planned to call in rebuttal to Windsor's insanity defense, the court would act to prevent any prejudice to Windsor when the expert was actually called as a witness at trial.

The record also shows that the defendant had over six months to prepare for trial from the date of his arraignment on June 26, 1990. The trial had already been continued and the Speedy Trial Act time tolled to provide an opportunity for Windsor's mental examination.

Prior to jury selection, Windsor abandoned his insanity defense. Therefore, he had no need for the belatedly produced discovery concerning the government's expert. In addition, most of the 5,000 pages of documents related to the insanity defense and the Witness Protection Program. Initially, it had been Windsor's contention that his treatment in the Witness Protection Program caused his mental condition to deteriorate so that he could no longer tell right from wrong when he committed the bank robbery. Once this defense was abandoned, the case became that of a straightforward robbery with statements of witnesses and investigators comprising the greater part of the relevant discovery and Brady material. The court properly concluded that the defendant would easily be able to review this material during the few days prior to trial. Because there was no compelling reason that would merit a continuance, the district court did not abuse its discretion by refusing to postpone the trial once again. *See United States v. Ware,* 890 F.2d 1008 (8th Cir.1989) (no abuse of discretion where, on the first day of trial, trial judge granted defendant's motion to proceed pro se but refused continuance for preparation time).

 Finally, Windsor contends that his conviction should be overturned because the jury was improperly instructed. He argues that the jury instructions "blurred all distinction" between the separate issues of whether he took funds by intimidation (which he conceded), and whether he put lives in jeopardy through use of a dangerous weapon. The defendant failed to object to any of the jury instructions at trial, so, once again, this issue must be reviewed for plain error.

We find no merit to Windsor's argument. The trial judge correctly instructed the jury on the four elements of the charged crime. *See* note 2, above. By separating the "intimidation" and "put in jeopardy" elements, the court directed the jury to distinguish between the subjective test for whether money was taken by intimidation and the objective analysis of whether lives were put in jeopardy by use of the pellet gun. Plain error did not infect these instructions, so we will not vacate Windsor's conviction on this ground.

## CONCLUSION

For the foregoing reasons, we Affirm the judgment of conviction entered by the district court.