2 F.3d 1153
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Robert A. TRIBBLE, Jr., also known as Robert A. Bertinelli,
Defendant-Appellant.
 No. 92-3532.
 United States Court of Appeals, Seventh Circuit.
 Submitted July 21, 1993.*
Decided Aug. 6, 1993.
 
 Before MANION and ROVNER, Circuit Judges, and ESCHBACH, Senior Circuit Judge.
 
 ORDER
 
 1
 Robert A. Tribble was indicted on four counts of wire fraud (18 U.S.C. Sec. 1343) and four counts of mail fraud (18 U.S.C. Sec. 1341). After a four-day trial, a jury convicted Tribble on all eight counts. Tribble appeals, raising a variety of issues for our consideration.
 
 I.
 
 2
 Between April and July of 1991, Tribble was incarcerated at the Federal Correctional Institution at Oxford, Wisconsin. Based on the evidence adduced at trial, the jury was entitled to believe (and, based on the guilty verdict, apparently did believe) the following: Tribble convinced several fellow inmates and their families that he was an attorney with a law firm called "Manana Litigative Services," which provided post-conviction legal assistance to inmates. Tribble also convinced them that, for approximately $25,000, he and the Manana staff would obtain sentence reductions and would defeat or obtain favorable settlement of all forfeiture actions against the inmates arising from their drug convictions. Before the scheme was uncovered, Tribble obtained $10,000 from the victims. During the course of this scheme, Tribble spoke with members of the inmates' families on the phone and sent them documents through the U.S. Mail. In late June of 1991, relatives of the inmates attended a hearing before Judge Stadtmueller. The hearing related to the pending forfeiture actions. Although the family members had expected an attorney from Manana Litigative Services to appear at the hearing, no attorney appeared. When they showed Judge Stadtmueller documents which Tribble had provided to them, he told them that he believed they were the victims of a scam. Tribble continued to encourage them to pay an additional $15,000 as called for in the bogus contract, but they paid him no additional money. No sentences were ever reduced, and several homes were forfeited to the government. See infra footnote 2.
 
 
 3
 Tribble was indicted for wire and mail fraud on March 30, 1992. R. 1. On April 9, 1992, Attorney Koua Vang was appointed to represent Tribble. Docket Entry No. 4. On April 27, 1992, Tribble was allowed to proceed pro se, with Vang as standby counsel. Docket Entry No. 24; see also Tr. (7/21/92) at 33-34. At some point (the record is unclear), the case was referred to a magistrate judge. The trial was rescheduled twice. It was eventually set for August 3, 1992. Docket Entry Nos. 30 & 56.
 
 
 4
 On July 27, 1992, Tribble filed a motion to withdraw his pro se representation. He indicated that he desired to have Vang appointed to represent him. R. 101. The next day the court granted Tribble's motion to withdraw and substituted Vang as Tribble's attorney. The court, however, denied Tribble's "implicit motion" for a postponement of the trial. The court reasoned that Vang had been receiving copies of all documents and that he and Tribble had six full days in which to prepare for trial. R. 106.
 
 
 5
 At the final hearing on July 30, 1992, held before Judge Shabaz, Vang moved for a continuance, claiming that he would not be ready to try the case beginning August 3 as scheduled. Judge Shabaz stated that he believed that Tribble's motion to withdraw as counsel had been for the purpose of delaying the trial; he noted that Tribble's trial was the only one scheduled for the week of August 3 and that the court's docket was crowded for the next few weeks; and that Vang still had sufficient time in which to prepare for trial. For these reasons, he refused to grant a continuance. Tr. (7/30/92) at 22-24. Tribble then asked to be allowed to represent himself, but the court denied his request. Id. at 28-30. Prior to trial, however, Judge Shabaz changed his mind and allowed Tribble to represent himself. The trial began on August 3, 1992. The jury found Tribble guilty on all eight counts. R. 117.
 
 II.
 
 6
 On appeal, Tribble raises five issues: (1) whether he received ineffective assistance of counsel, (2) whether he was denied a fair trial because the government failed to produce allegedly exculpatory evidence despite a court order to do so, (3) whether he was denied compulsory process to have witnesses testify on his behalf, (4) whether the district court erred by failing to give a jury instruction on mistaken identity, and (5) whether the district court erred in sentencing him.
 
 A. Ineffective Assistance of Counsel
 
 7
 Tribble raises two issues in this regard. He claims that he received ineffective assistance of counsel because Vang was unable to adequately prepare for trial. This argument fails because there is no right to effective assistance of standby counsel. United States v. Windsor, 981 F.2d 943, 947 (7th Cir.1992). Tribble also claims that Vang's unpreparedness "forced" Tribble to represent himself, and, because he was merely a layman, he was therefore denied effective assistance of counsel. Tribble's troubles were of his own making. Against the advice of the magistrate judge, see R. 106, he initially chose to represent himself. See Tr. (7/21/92) at 33. The magistrate judge granted Tribble's request, made one week before trial, to substitute Vang as his attorney. When the district court later denied Vang's oral motion for a continuance, Tribble made another about face and insisted that he be allowed to represent himself. Tr. (7/30/92) at 28-30. Ultimately, Tribble got his way. If Vang was unprepared, it was because Tribble was adamant on representing himself until one week before trial. The fact that Tribble was a layman does not warrant a finding of ineffective assistance of counsel. "A defendant who has elected to represent himself 'cannot thereafter complain that the quality of his own defense amounted to a denial of "effective assistance of counsel." ' " Windsor, 981 F.2d at 947 (quoting Faretta v. California, 422 U.S. 806, 834-35 n. 46 (1975)).
 
 
 8
 Tribble claims that the district court abused its discretion in denying Vang's motion for a continuance of the trial. Reply Br. 4. In considering this claim, we note the following: the motion came just days before trial; the government was prepared to go to trial and was not the cause of Tribble's predicament (Tribble waiting until one week before trial to withdraw his pro se representation); a continuance would have resulted in the waste of the court's time because Tribble's case was the only one scheduled for that week; Vang had been given copies of all the documents (and acknowledged that he had read them), and he still had some time to prepare. We conclude that the district court did not abuse its discretion in refusing to grant a continuance. Windsor, 981 F.2d at 948.
 
 
 9
 We reject Tribble's claim that he was denied the effective assistance of counsel.
 
 B. Government's Failure to Produce Evidence
 
 10
 Tribble claims that he was denied a fair trial because the government failed to provide him with allegedly exculpatory material despite the fact that this evidence had been subpoenaed. Tribble had sought: (1) recreation department and labor passes for April, May, and June, 1991, (2) inmate typewriter check-out records for March through June, 1991, (3) the telephone sign up sheets for Waushara and Sauk Unit inmate telephones, and (4) the special housing unit's bed book or cell assignment log. Tr. (7/30/92) at 9. At the final hearing before Judge Shabaz, the government explained that the first three items were destroyed pursuant to standard procedure. Specifically, the recreational and labor passes and the telephone sign-up sheets are kept for only 30 days, and the typewriter check-out records are kept for only six months. As for the cell assignment log, the government represented to the court that it would be available at trial. Id. Tribble did not argue that his rights had been violated by the government's destruction of the first three items, and therefore we will reverse only upon a showing of plain error. Fed.R.Crim.P. 52(b).[1]
 
 
 11
 There is certainly no plain error with respect to items 1, 3, and 4. Items 1 and 3 are routinely destroyed after 30 days. The victims were first alerted to the possibility that they had been defrauded in late June of 1991. By the time it became clear that Tribble was the culprit, it is almost certain that the relevant records had been destroyed. Thus, with respect to items 1 and 3, the government was not grossly negligent for destroying them. United States v. Morrison, 518 F.Supp. 917, 919 (S.D.N.Y.1981). As for item 4, the cell assignment log, apparently it was available, but Tribble chose not to use it.
 
 
 12
 We now turn to item 2, the typewriter check-out records. Tribble claims that these records would have revealed that he did not type the documents that were sent to the victims. Because these records are kept for six months, it is possible that before these materials were destroyed, the government should have been aware that this material might be relevant to Tribble's defense. We nevertheless find no plain error.
 
 
 13
 In order for us to find plain error, we must conclude that the error "probably changed the outcome of the trial." United States v. Douglas, 818 F.2d 1317, 1320 (7th Cir.1987). In this case, we do not believe that the absence of the typewriter check-out records probably changed the outcome of the trial. It is possible that Tribble had someone else check out the typewriter and perhaps type the documents for him. It is unlikely that the typewriter checkout records would have been enough to sway the jury, especially in light of all the other evidence of Tribble's guilt, which was extensive.[2] Thus, we find no plain error with respect to item 2.
 
 
 14
 We reject Tribble's claim that he was denied a fair trial because the government failed to produce these documents.
 
 C. Denial of Compulsory Process
 
 15
 Tribble claims that he had requested subpoenas for two witnesses, Ricky Harris and Sheldon Schoenborn, that the subpoenas were turned over to the U.S. Marshal's service for execution, but that they were never served and were never available to testify at trial. We agree with the government that Tribble has waived this argument because he failed to object when the district court concluded at a conference during trial that the magistrate judge had never authorized these two witnesses to testify. Tr. (8/4/92, 5:30 p.m.) at 2. We therefore may review only for plain error. Fed.R.Crim.P. 52(b). Tribble, however, offers no argument in his reply brief that the court committed plain error; instead, he again argues that we should not find a waiver because he was proceeding pro se and could not be expected to make a timely objection. We again reject this argument. See supra note 1. Moreover, our own review of the final pretrial conference before the magistrate judge has revealed no authorization for these two witnesses. We conclude that the district court did not commit plain error, and thus we reject Tribble's claim that he was denied compulsory process.
 
 D. Failure to Instruct on Mistaken Identity
 
 16
 Tribble next objects to the fact that the district court did not instruct the jury on mistaken identity. Several of the family members of the inmates who were supposed to be helped by Manana Litigative Services were contacted by telephone and mail. Tribble therefore suggests that someone else might have perpetrated the fraud in his name. Tribble argues that the district court erred by not instructing the jury on mistaken identity. Once again, the government responds by arguing waiver.
 
 
 17
 At the final pretrial conference, the magistrate judge specifically told Tribble that he could offer a theory of defense instruction at the close of the evidence. Tr. (7/21/92) at 3-4. At the jury instruction conference during trial, Judge Shabaz went over the instructions that he planned to give. He then specifically asked Tribble whether Tribble had any further instructions that he thought would be appropriate. Tribble said there were none. Tr. (8/5/92, 8:30 a.m.) at 10. This issue has clearly been waived and is reviewable only for plain error. Fed.R.Crim.P. 30 & 52(b). Tribble has not argued that this omission constitutes plain error. The jury was charged with determining whether "the defendant" was guilty beyond a reasonable doubt. If the jurors seriously doubted that Tribble was the perpetrator of the fraud, the instructions they were given directed them to return a not guilty verdict. We therefore find no plain error in the court's failure to instruct the jury on mistaken identity.
 
 E. Sentencing
 
 18
 Tribble was sentenced to 51 months' imprisonment for each of the eight counts on which he was convicted, the sentences for all eight counts to be served concurrently with each other. R. 133. His sentence was based on an offense level of 15 and a criminal history category of VI. The offense level was based, in part, on a two-level enhancement for more than minimal planning (Sec. 2F1.1(b)(2)) and an equal enhancement for obstruction of justice (Sec. 3C1.1). Tribble objects to both of these enhancements.
 
 
 19
 Tribble claims that he should not have received an enhancement for more than minimal planning because, as of February 3, 1993, that adjustment has been removed from the guidelines. Assuming this to be true, it is irrelevant because the district court is required to apply the guidelines in effect at the time of sentencing. 18 U.S.C. Sec. 3553(a)(4). In this case, Tribble was sentenced on October 1, 1992, so the 1991 version of the guidelines applied in Tribble's case. That version still provided for an adjustment for more than minimal planning. Tribble offers no support for his speculation that "[t]he new guidelines are anticipated to be effective retroactively." Br. 12-13. We therefore conclude that the district court properly enhanced Tribble's offense level for more than minimal planning.
 
 
 20
 Finally, Tribble argues that the district court erroneously enhanced his offense level by two levels for obstruction of justice. The Constitution permits the sentencing court to enhance a defendant's sentence under Sec. 3C1.1 for perjury. United States v. Dunnigan, 113 S.Ct. 1111 (1993). The district court found that Tribble had lied throughout the proceedings in an effort to obstruct justice. Tr. (10/1/92) at 36-37. This conclusion is fully supported by Tribble's testimony where he repeatedly denied involvement in the fraud upon the victims. Tr. (8/5/92) at 44-73.
 
 III.
 
 21
 For the foregoing reasons, Tribble's conviction and sentence are AFFIRMED.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." Fed.R.App.P. 34(a); Circuit Rule 34(f). No such statement having been filed, the appeal is submitted on the briefs and record
 
 
 [1]
 We reject Tribble's argument that, because he is a layman, he is not subject to the normal rules of waiver. He deliberately chose to proceed pro se, and thus as we indicated in part A, supra, his predicament was of his own making
 
 
 [2]
 There was testimony from many different people about Tribble's involvement in this scam. E.g., Tr. (8/3/92) at 19-21 (Linda Rus), 52-58 (Kevin Lawrence), 74-80 (Terry Daniels), 90-102 (Leonard Walker); Tr. (8/4/92) at 21-31 (Elaine Blackmon), 49-64 (Bessie Gardner)