# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-11-00238-CR
NO. 03-11-00473-CR
NO. 03-11-00474-CR
NO. 03-11-00525-CR

**Elridge Vanderhorst Hills, Jr., Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF BELL COUNTY, 426TH JUDICIAL DISTRICT
### NOS. 67020 & 67021, HONORABLE FANCY H. JEZEK, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Elridge Vanderhorst Hills, Jr., was charged with harassing Jimmy Evans and Alexander Cruz-Nazario, officers at the Bell County Jail (the jail) where Hills was an inmate at the time. *See* Tex. Penal Code Ann. § 22.01 (West 2011). Following a bench trial in which Hills represented himself but was appointed standby counsel, the district court convicted Hills of the charged offenses and sentenced him to fourteen years' imprisonment.[1] In three issues on appeal, Hills, who is proceeding pro se, asserts that the State withheld exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963); that the district court "furthered" the alleged *Brady* violation

---

[1] Punishment was enhanced by Hills's prior conviction in South Carolina for the offense of distribution of crack cocaine. The record also reflects that Hills had a prior conviction in Texas for the offense of assault on a public servant and a prior federal conviction for the offense of possession of a firearm by a convicted felon.

by quashing what Hills characterizes as a subpoena duces tecum; and that standby counsel provided ineffective assistance by "partaking" in the alleged *Brady* violation.[2] We will affirm the judgments of conviction.[3]

## BACKGROUND

The district court heard evidence that on September 5, 2010, Evans, a shift supervisor in the jail, was escorting Hills to the jail's "multipurpose room," which, in addition to being used for general recreational and assembly purposes, also contains a law library. Evans testified that when

---

[2]   The arguments in Hills's brief are presented in such a manner as to be nearly incomprehensible. In identifying his issues on appeal, we have construed the briefing rules liberally as we are required to do, and looked to the substance of his contentions as best as we can discern them. *See* Tex. R. App. P. 38.9. However, to the extent that Hills purports to raise any additional issues in his brief, we find that they are inadequately briefed and are therefore waived. *See* Tex. R. App. P. 38.1(i) (appellant's brief must contain clear and concise argument for contentions made, with appropriate citations to authorities and record); *see also Faretta v. California*, 422 U.S. 806, 834 n.46 (1975) ("The right of self-representation is not . . . a license not to comply with relevant rules of procedural and substantive law."); *Alvarado v. State*, 912 S.W.2d 199, 210 (Tex. Crim. App. 1995) ("[T]he right to appellate review extends only to complaints made in accordance with our rules of appellate procedure."); *Perez v. State*, 261 S.W.3d 760, 764 n.2 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd) ("[W]e hold a pro se appellant to the same standards as a licensed attorney, and require [him] to comply with applicable laws and rules of procedure.").

[3]   We have previously consolidated the causes on appeal for record and briefing purposes. *See Hills v. State*, Nos. 03-11-00238-CR, 03-11-00473-CR, 03-11-00474-CR, 03-11-00525-CR, 2012 Tex. App. LEXIS 2125 (Tex. App.—Austin Mar. 15, 2012) (per curiam order). In appellate cause number 03-11-00238-CR, Hills has filed a notice of appeal from an order relating to a pretrial motion that he had filed seeking to recuse the district court judge, which was denied. In appellate cause number 03-11-00525-CR, Hills has filed a notice of appeal from the district court's denial of his motion for new trial. In appellate cause number 03-11-00473-CR, Hills has filed a notice of appeal from the final judgment of conviction in trial court cause number 67020. In appellate cause number 03-11-00474-CR, Hills has filed a notice of appeal from the final judgment of conviction in trial court cause number 67021. On appeal, Hills has not briefed the issues that were raised in his recusal motion or in his motion for new trial. Accordingly, any issues involving those orders have been waived. *See* Tex. R. App. P. 38.1.

they arrived at the entrance to the room, Hills requested to make copies of certain documents but Evans refused the request. As a result, Hills became "agitated" and refused to enter the room despite Evans ordering him to do so. According to Evans, during the ensuing confrontation, Hills told him, "I ought to just spit in your face." Evans explained that Hills then "hocked up" his saliva and spit in Evans's face and nose. Shortly thereafter, other officers arrived and restrained Hills. Evans further testified that as he and other officers were taking Hills back to his cell, Hills stated, "I'll do it again. They never did anything to me about your case.[4] Watch, I'll do it again." Hills then proceeded to spit in Evans's face a second time. This time, Hills's saliva also contacted Cruz-Nazario, who had assisted with restraining Hills and transporting him back to his cell. Cruz-Nazario testified that when Hills spit in Evans's face, the saliva also contacted the left side of his forehead. When the officers finally secured Hills in his cell, Evans recalled, Hills "came to the door and said, 'I'm just going to have to murder one of you.'"

The incident was observed in part by correctional officers Richard Taylor, Ismael Colon, and Madeline Adkins, each of whom testified for the State and corroborated the accounts of Evans and Cruz-Nazario. Also admitted into evidence was a video recording taken from one of the security cameras in the jail which captured Hills's first occurrence of spitting but not the second.

Hills testified in his defense. Hills denied the charges against him but claimed that if he did spit in Evans's face, he had been "provoked" into doing so by Evans, who, according to

---

[4] The record does not specify the "case" to which Hills was referring. However, the record reflects that Hills and Evans had a history of interaction at the jail which included Hills filing a grievance against Evans for interfering with Hills's "business" and "legal disputes."

3

Hills, had antagonized him prior to the first instance of spitting and had choked him prior to the second instance of spitting.[5] Throughout trial, Hills asserted that the security camera should have recorded Evans's actions, and he claimed that because it did not, jail officials must have withheld or tampered with the "missing" portions of the recording. However, the jail officials who testified at trial explained that the camera simply failed to record the entirety of the incident, due to either a camera malfunction or a lack of camera coverage in certain areas of the jail. It is the availability of this recording and related evidence which forms the basis for Hills's issues on appeal.

## ANALYSIS

**Alleged *Brady* violation**

In his first issue, Hills asserts that the State violated *Brady v. Maryland* by withholding certain portions of the video recording. *See* 373 U.S. at 87. The State responds that there was no *Brady* violation because the prosecutors provided Hills with the only recording that existed. The State also argues that Hills has failed to show how the allegedly withheld evidence was material to his case.

A defendant in a criminal case has no general right to pretrial discovery of evidence in the State's possession. *See Weatherford v. Bursey*, 429 U.S. 545, 559 (1977); *Pena v. State*, 353 S.W.3d 797, 809 n.10 (Tex. Crim. App. 2011); *Hall v. State*, 283 S.W.3d 137, 163 (Tex. App.—Austin 2009, pet. ref'd). However, under *Brady* and its progeny, there exists a federal constitutional right to certain minimal discovery. *See United States v. Bagley*, 473 U.S. 667 (1985);

---

[5] Evans testified that what Hills characterized as "choking" was instead Evans putting his hands to Hills's face in an attempt to restrain him and prevent further spitting.

*United States v. Agurs*, 427 U.S. 97 (1976); *Pena*, 353 S.W.3d at 809; *Hall*, 283 S.W.3d at 163. That right is violated only if: (1) the State failed to disclose evidence, regardless of the prosecution's good or bad faith; (2) the withheld evidence is favorable to the accused; and (3) the evidence is material, that is, there is a reasonable probability that had the evidence been disclosed, the outcome of the trial would have been different. *Hampton v. State*, 86 S.W.3d 603, 612 (Tex. Crim. App. 2002); *Hall*, 283 S.W.3d at 163.[6]

It does not appear that Hills has preserved a *Brady* complaint for our review. To preserve error, a complaint must be "made to the trial court by a timely request, objection, or motion that . . . state[s] the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context." Tex. R. App. P. 33.1(a)(1)(A). The record must also show that the trial court "ruled on the request, objection, or motion, either expressly or implicitly" or "refused to rule on the request, objection, or motion, and the complaining party objected to the refusal." Tex. R. App. P. 33.1(a)(2).

Hills made no specific claim prior to trial, during trial, or in his motion for new trial that the State had withheld exculpatory evidence in violation of *Brady*. Instead, after reviewing the recording immediately prior to trial, Hills complained to the district court that the recording was incomplete and that, as a result, "there's no way to say" what had happened during the unrecorded

---

[6] Additionally, the evidence central to the *Brady* claim must be admissible in court. *See Ex parte Kimes*, 872 S.W.2d 700, 703 (Tex. Crim. App. 1993).

5

portion of the incident. In response, the district court stated, "Well, that's what this trial is about, sir." Hills then questioned "why in this circumstance that [camera] angle was not given." The district court replied, "I'll let you address that in the course of this trial." Hills proceeded to do so, extensively questioning several witnesses during trial regarding the operation of the security camera and the recording that it had produced. Then, during his own testimony, Hills speculated, "And there are [camera] angles that haven't been presented. And I feel as though that's been deliberately done in an act of bad faith to hide further provokings [sic] on behalf of Corporeal Jimmy Evans because he did choke me." Finally, in his closing argument, Hills asserted, "The exhibits contribute to highlighting or elucidating, or what provoked me into doing what I did, along with what I call [an] act of bad faith for the other angle of the whole incident to be excluded. That's . . . another showing that my case . . . was damaged today, because that coverage would have clearly shown . . . the man choking me."

Even if we were to liberally construe Hills's trial arguments as a complaint that the State had withheld exculpatory evidence in violation of *Brady*, the district court made no express ruling on any such complaint. Therefore, for error to have been preserved, the district court must have implicitly overruled Hills's purported *Brady* complaint. On this record, there does not appear to be any such ruling, either during trial or at the hearing on the motion for new trial. *Cf. Pena*, 353 S.W.3d at 807-08 (explaining preservation of error in context of *Brady* violation and holding that "the record of the motion for a new trial hearing reflects that the *Brady* issue was preserved for appeal"); *Clarke v. State*, 270 S.W.3d 573, 579 (Tex. Crim. App. 2008) (holding that appellant preserved error by arguing *Brady* claim at hearing on motion for new trial).

6

However, even if we were to find that Hills properly raised a *Brady* complaint and that the district court implicitly overruled that complaint, the record would support implied findings by the district court that Hills had failed to establish a *Brady* violation. The record reflects that at a pretrial hearing approximately three months prior to trial, the prosecutors provided the video recording of the incident to Hills's standby counsel. The record supports a finding by the district court that no recording existed other than the one that the State provided. At trial, several witnesses attempted to explain to Hills why the camera did not record the entire incident. When Hills asked Evans why the camera did not record the second instance of spitting, Evans testified, "Because not every inch of the jail is covered by a camera." Later, Officer Taylor testified, "There is a camera in front in the corner of the multipurpose door, but I don't believe the camera shows the hall where you spat the second time on him." Additionally, there was testimony presented that the camera might not have been functioning properly at the time of the incident. Officer Cruz-Nazario testified that the camera "could work, but it had a very sensitive touch. It can automatically go on its own or automatically go down." When asked if there were "any problems with the camera," Officer Adkins testified, "Oh, yes, ma'am. We had a work order put in on that camera for at least two months." She added, "It was very sensitive. At certain times it would just go straight up into the ceiling and just fixate on the ceiling. Then it would go straight to the floor. And it was all over the place." In response to a question as to why the entire incident was not "preserved" on video, Major Robert Patterson, the jail administrator, testified, "I think when you say it's not preserved, it's misleading. If the system was malfunction[ing], if one of the camera angles was not operating, it's not going to record. And it won't be able to be retrieved, and therefore, we can't archive it." Based

7

on this and other testimony, the district court could have reasonably determined that there was no other recording for the State to disclose. *See Hafdahl v. State*, 805 S.W.2d 396, 399 n.3 (Tex. Crim. App. 1990) ("*Brady* and its progeny do not require prosecuting authorities to disclose exculpatory information to defendants that the State does not have in its possession and that is not known to exist."); *Harwood v. State*, 961 S.W.2d 531, 545 (Tex. App.—San Antonio 1997, no pet.) ("The State is not obligated to produce evidence of which it has no knowledge, and [appellant] has not demonstrated that the State knew about or ever possessed the tapes.").

Moreover, even if another recording of the incident existed and the State had failed to disclose it, the record further supports an implied finding that Hills failed to demonstrate how the undisclosed evidence would have been material to his case. Undisclosed evidence is "material" to guilt or punishment "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Hall*, 283 S.W.3d at 171 (quoting *Bagley*, 473 U.S. at 682). A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." *Id*. In other words, "[t]he question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Id*. (quoting *Kyles v. Whitley*, 514 U.S. 419, 434 (1995)). Although the standard "is not a sufficiency of the evidence test," the defendant must "show[] that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Id*. (quoting *Kyles*, 514 U.S. at 434-35). "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does

8

not establish 'materiality' in the constitutional sense." *Hampton*, 86 S.W.3d at 612 (quoting *Agurs*, 427 U.S. at 109). "Usually, a determination concerning the materiality prong of *Brady* involves balancing the strength of the [favorable] evidence against the evidence supporting [the verdict]." *Id*. at 613. We must accordingly consider "the entire body of evidence" presented at trial. *Id*.

This was a case in which multiple eyewitnesses observed the offenses and testified as to what they saw. Both of the alleged victims also testified, as did the defendant. Thus, there was considerable testimony in this case that supported the verdict, in addition to the video recording that was admitted. The district court could have reasonably concluded that additional video evidence of the incident might have shown, at most, Evans "provoking" Hills in the manner that Hills had claimed. The record would support an implied finding that there was not a reasonable probability that such evidence would have changed the outcome of the proceeding. No claim was made that Hills's spitting was an act of self-defense as that term is defined in the penal code. *See* Tex. Penal Code Ann. § 9.31 (West 2011). Therefore, the district court could have reasonably found that Evans's alleged conduct, even if true, would not have justified Hills's spitting in the faces of Evans and Cruz-Nazario. We overrule Hills's first issue.

**Subpoena duces tecum**

In his second issue, Hills asserts that the trial court "furthered" the alleged *Brady* violation by quashing what he characterizes as a subpoena duces tecum. In this issue, it appears that Hills is essentially arguing that the district court prevented him from establishing a *Brady* violation by excluding certain testimony and records that, in Hills's view, would have demonstrated that the State had withheld exculpatory evidence.

9

There is no merit to Hills's claim. The document that Hills characterizes as a subpoena duces tecum was, for the most part, merely a list of witnesses that Hills had wanted to call in his defense.[7] These witnesses were Major Robert Patterson, Lieutenant Charles Grogan, District Clerk Sheila Norman, and an unspecified "designee" of the Texas Board of Pardons and Paroles (the Board). Three of the four witnesses listed in the document—Patterson, Grogan, and Norman—were subpoenaed by the district court per Hills's request and appeared in court to testify. Norman was called to the stand but did not testify.[8] Patterson and Grogan, on the other hand, testified extensively regarding the matters into which Hills inquired, although the district court sustained several relevance objections by the State to certain questions posed by Hills. To the extent that Hills is arguing that the district court abused its discretion in sustaining the State's relevance objections, we disagree. The excluded testimony related to jail policies and grievance procedures that, the district court could have reasonably concluded, had nothing to do with the issue of whether Hills had committed the offenses of which he was charged. The district court would not have abused its discretion in finding that such testimony was not relevant to the case. *See* Tex. R. Evid. 401; *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006) ("[A] trial court's ruling admitting or excluding evidence is reviewed on appeal for abuse of discretion."); *Montgomery v. State*,

---

[7] A subpoena duces tecum, in contrast to an ordinary subpoena, is issued when a witness has "in his possession any instrument of writing or other thing desired as evidence." Tex. Code Crim. Proc. Ann. art. 24.02 (West 2009). The subpoena duces tecum "may specify such evidence and direct that the witness bring the same with him and produce it in court." *Id*. With one exception noted below, Hills's document did not refer to any such evidence.

[8] The first question that Hills asked Norman related to complaints that Hills had filed against the jail. After the district court sustained a relevance objection by the State, Hills had no other questions for the witness and she was excused.

810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (no abuse of discretion occurs so long as evidentiary rulings are "within the zone of reasonable disagreement").

The fourth witness that Hills had wanted to appear was an unspecified designee of the Board of Pardons and Paroles. Unlike the other subpoenaed witnesses, Hills requested that this witness provide documentary evidence, specifically records relating to the "actual date and time" when Hills was allegedly granted "parole in absentia." The Board filed a motion to quash, which the district court granted. During the hearing on the motion to quash, the Board stated that it was not the custodian of records of the documents that Hills sought and thus could not provide copies of the records as requested. The district court would not have abused its discretion in granting the motion to quash on that ground. Additionally, "[a] subpoena duces tecum is not to be used as a discovery weapon, but as an aid to discovery based upon a showing of materiality and relevance." *Reece v. State*, 878 S.W.2d 320, 326 (Tex. App.—Houston [1st Dist.] 1994, no pet.). The district court would not have abused its discretion in concluding that documents relating to whether and when Hills was granted "parole in absentia" were not material to this case. We overrule Hills's second issue.

**Ineffective assistance of standby counsel**

In his third issue, Hills asserts that standby counsel provided ineffective assistance by "partaking" in the alleged *Brady* violation. In this issue, Hills appears to argue that standby counsel failed to deliver the video recording to him in a timely manner and that, as a result, Hills was unable to effectively use the recording in his defense.

11

It is well settled that there is no constitutional right to hybrid representation. *See Dunn v. State*, 819 S.W.2d 510, 525-26 (Tex. Crim. App. 1991); *Scarbrough v. State*, 777 S.W.2d 83, 92 (Tex. Crim. App. 1989); *Landers v. State*, 550 S.W.2d 272, 280 (Tex. Crim. App. 1977). Accordingly, federal courts have repeatedly held that there is no corresponding constitutional right to the effective assistance of standby counsel. *See, e.g.*, *United States v. Oliver*, 630 F.3d 397, 413-14 (5th Cir. 2011); *United States v. Morrison*, 153 F.3d 34, 55 (2nd Cir. 1998); *United States v. Windsor*, 981 F.2d 943, 947 (7th Cir. 1992).[9] Thus, absent circumstances that are not implicated here, Hills cannot obtain relief on such a claim.

Moreover, even assuming that Hills had a constitutional right to the effective assistance of standby counsel, we could not conclude on this record that Hills has established that standby counsel was ineffective. To be entitled to relief, Hills must prove by a preponderance of the evidence that (1) counsel's performance fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *See Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). Thus, the "benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686.

The record reflects the following. At a pretrial hearing approximately three months prior to trial, the State provided the video recording of the incident to Hills's standby counsel. At

---

[9] In fact, Hills was the appellant in one such case. *See United States v. Hills*, 425 Fed. Appx. 292, 296-97 (5th Cir. 2011) (per curiam).

12

that time, standby counsel informed the district court that he had the ability to play the recording on his laptop computer and that he would "make an appointment with Mr. Hills in the next day or two" so that Hills could review the recording. Approximately two months later, at another pretrial hearing, Hills requested a continuance, informing the district court that he had not yet had an opportunity to review the recording. In response, standby counsel explained that he had experienced difficulty in playing the recording on his computer but that he was in the process of resolving the issue. The district court directed standby counsel to show the recording to Hills within ten days.

On the day of trial, Hills again complained that he had not had an opportunity to review the recording. However, standby counsel informed the district court that he had visited the jail three times but that Hills had refused to see him each time. Hills claimed that standby counsel had not visited him until "the last minute," but the district court reminded Hills that he was representing himself and that it was "up to [Hills] whether or not [he] communicated with [standby counsel]." After standby counsel again explained that he had attempted to visit with Hills on three occasions, including the night before trial, but that Hills had refused to see him, the district court took a recess and allowed Hills to review the recording in court. After Hills had reviewed the recording, the trial began.

We could not conclude on the above record that standby counsel's performance fell below an objective standard of reasonableness. Counsel stated that he had visited Hills at the jail on three occasions but that Hills had refused to see him each time. As the district court explained, because Hills was representing himself, it was his responsibility to communicate with standby

13

counsel in order to arrange a time to review the recording. That Hills chose not to communicate with standby counsel does not establish that standby counsel's performance was deficient.

Moreover, even if standby counsel's performance had been deficient, we could not conclude on this record that there is a reasonable probability that but for counsel's performance, the result of the proceeding would have been different. As we have already explained, this was a case that turned not on the video evidence but on the testimony of the eyewitnesses who had observed and were involved in the incident. And, as Hills acknowledges, the recording does not show the entirety of the incident. Thus, we could not conclude that if Hills had viewed the recording earlier, it would have affected his defense to such a degree as to undermine our confidence in the outcome of the proceeding. We overrule Hills's third issue.

## CONCLUSION

We affirm the judgments of the district court.

_____

Bob Pemberton, Justice

Before Chief Justice Jones, Justices Pemberton and Rose

Affirmed

Filed: July 20, 2012

Do Not Publish

14